```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

---

CRISTIE FORD,

                              Plaintiff,

    v.

AMERICAN SIGNATURE, INC.,

                              Defendant.

**Report & Recommendation**
18-CV-1200-JLS-HBS

---

### INTRODUCTION

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b). Plaintiff Cristie Ford ("Ford" or "plaintiff") brings this age discrimination action against her former employer, defendant American Signature, Inc. ("ASI"). Currently before the Court is ASI's motion for summary judgment. Docket # 39. Ford opposes the motion, Docket # 41, and ASI has filed its reply. Docket # 42. The matter is therefore fully briefed.

For the reasons that follow, the Court recommends that ASI's motion for summary judgment be **GRANTED** and Ford's complaint be **DISMISSED**.

### LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, the standard provides that the mere

existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute of fact is material "only if it has some effect on the outcome of the suit." Eagley v. State Farm Ins. Co., No. 13-CV-6653, 2015 WL 5714402, at *6 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted). Moreover, a genuine issue exists as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. When deciding a summary judgment motion, courts must resolve all inferences and ambiguities in favor of the party against whom summary judgment is sought. Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The reasonableness of those inferences, though, depends on "the record taken as a whole." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The burden of showing the absence of any issue of material fact rests with the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has established its prima facie entitlement to summary judgment, the burden shifts to the non-moving party to "go beyond the pleadings and by . . .

2

affidavits, or by the depositions, answers to interrogatories, and admission on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (emphasis added) (internal citations omitted).  Put differently, the non-moving party must show that materials cited "establish . . . the presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).  It is not enough for the non-movant to present evidence that just raises doubts; the non-movant must present "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256.  The "mere existence of a scintilla of evidence" to support the non-moving party's claims is insufficient to defeat a motion for summary judgment.  Id. at 252.

In evaluating the merits of a summary judgment motion in the context of a discrimination claim, courts must be cautious in granting relief where the conduct at issue "requires an assessment of individuals' motivations and state of mind . . . ." Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001).  These are "matters that call for a sparing use of the summary judgment device because of juries' special advantages over judges in this area." Id. (internal quotations and citations omitted).  Nevertheless, "the salutary purposes of summary judgment – avoiding protracted, expensive, and harassing trials – apply no less to discrimination

cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Indeed, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994); see also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."). Ultimately, at this stage, the trial court is limited to "issue-finding," and not resolution, while keeping "in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute." Gallo v. Prudential Residential Serv., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## FACTUAL BACKGROUND[1]

ASI operates retail furniture stores throughout the United States under the names Value City Furniture and American Signature. In July 2008, ASI hired Ford as a "Home Furnishings Consultant" at the Greece, New York location of Value City Furniture. As a Home

---

[1] The relevant facts set forth are based on the evidence and legal theories that the parties proffer in their summary judgment briefing. The Court does not, and need not, "scour the record on its own in a search for evidence" that a party has not presented, In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 44 F. Supp. 3d 409, 426 (S.D.N.Y. 2014), nor does the Court "construct arguments or theories that a party has failed to raise in briefing." Mason v. George, 24 F. Supp. 3d 1254, 1261 (M.D. Ga. 2014).

Furnishings Consultant, Ford acted as a salesperson, "work[ing] with customers to select merchandise" and facilitating the purchase and delivery processes. Docket # 39-1 at 3. Ford transferred to several other locations during her career with ASI. From April 2016 until her termination in October 2017, Ford worked at the Cheektowaga location of Value City Furniture. At the Cheektowaga location, the sales manager was Hollie Nashwinter, the assistant manager was James Wiley, and the store manager was Elias Rivera. In addition, from February 2017 to Ford's termination in October 2017, Felicia Patel acted as the regional human resources manager for ASI.

ASI submits that Ford's termination was based on her unexcused absences from work. ASI maintains various policies related to attendance. ASI's employee handbook states that ASI "requires regular and punctual attendance." Docket # 39-3 at 201. "Failure to notify ASI of any anticipated absence" is grounds for disciplinary action, "up to and including termination." Id. The employee handbook advises employees that they would "typically" be subject to progressive "corrective" action for unauthorized absences, which would include "the following steps: (1) verbal counseling; (2) written warning; (3) final warning; and (4) termination." Id. at 217. Notwithstanding that provision, the handbook also made clear that adherence to the progressive

5

discipline steps was <u>not</u> mandatory. The handbook specifically stated that ASI "at all times reserve[d] the right to impose any disciplinary action—up to and including termination—which it determines is appropriate to a particular situation." <u>Id.</u> at 215; <u>see also id.</u> at 192 (stating that employment is "at will," that ASI may end the relationship "at any time for any reason not otherwise prohibited by law," and that nothing in the handbook "restricts in any way the right of ASI . . . to terminate the employment relationship").

As a long tenured employee, Ford was entitled to three weeks of vacation time and five days of sick time each year, Docket # 39-3 at 205, but could only use such time if it was pre-approved by her supervisor. <u>Id.</u> at 205-06, 219. ASI also provided leave in accordance with the Family and Medical Leave Act ("FMLA"). <u>See id.</u> at 207. Employees who had worked at ASI for over one year were eligible for FMLA leave but were required to report the leave to ASI's "Leave Administrator" along with specific information and documentation to substantiate the leave request. <u>Id.</u>

At some point in early July 2017, Ford requested vacation leave for the period between July 8 and July 22. Nashwinter denied that request but approved leave for a shorter period from July 9 to July 17, as well as for July 19. <u>See</u> Docket # 39-5 at 9. Although vacation leave was not granted, Ford did not come to work

6

on July 8. Nashwinter attempted to contact Ford on July 8, to no avail. Approximately one week later, on July 16, Nashwinter received a text message from Ford, who indicated that she was absent due to a loved one's suicide attempt. Nashwinter again called and sent a text message asking for Ford to contact her, but Ford did not respond. Ford returned to work on July 22 and provided proof of the suicide attempt to Rivera and Nashwinter. Because Ford had sufficient vacation time to cover the absence, ASI "excused this attendance infraction" and "applied [] Ford's available accrued vacation to her absence."[2] Id. at 5.

On September 19, 2017, Ford did not appear for her scheduled shift. The following day, Ford contacted Rivera and sent a note from her medical provider. The note, titled "Excuse Slip," indicates that the provider treated Ford on September 20 and permitted her to return to work on October 3, 2017. Docket # 39-5 at 11. The note does not provide any further details about Ford's condition or the reason for her absence.[3]

---

[2] This is the sequence of events as generally alleged by Patel and ASI. See Docket # 39-1 at 5-6. In her Rule 56 Statement of Facts, Ford does not dispute the way the events proceeded, but challenges only the legal relevance of the absence given that ASI ultimately excused it. See Docket # 41-3 at 3-4. The Court therefore accepts ASI's proffer. See Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 432-33 (S.D.N.Y. 2014) (noting that a court is not required to consider facts that the parties "fail to point out" and is permitted "to rely solely on the materials that [a] party cites [in her Rule 56 Statement] in deciding whether the party has carried its burden"); Loc. R. Civ. P. 56(a)(2).

[3] Like the July 2017 absence, in her Rule 56 Statement of Facts, Ford only disputes whether the September-October 2017 leave was appropriate under ASI's

Because the requested leave would exceed Ford's remaining vacation and sick leave, her request was treated as one for FMLA leave. ASI's Leave Administrator, Matrix Absence Management, Inc., sent a packet of materials to Ford and requested supporting documentation to substantiate her leave request. Ford received the materials but did not believe she needed to take any action because she did not intend to take that type of leave.[4] See Docket # 41-3 at 5.

When Ford returned to work on October 3, 2017, she met with Patel. At that meeting, Ford raised various complaints against Rivera. Among other things, Ford alleged that Rivera was "trying to get rid of the senior work force" and made inappropriate, sexually suggestive comments to her. See Docket # 41-2 at 5-6. Ford alleges that Patel appeared "extremely uncomfortable during the conversation." Id. at 7. Patel told Ford that these complaints "were [her] own fault," and she forbid Ford from discussing "the details of [their] conversation" with any of her co-workers. Id.

---

policies; she does not challenge the sequence of events that ASI describes. See Docket # 41-3 at 4-5.

[4] At her deposition, Ford claimed that she had contacted her doctor's office about Matrix's request and "believed her doctor had submitted the requested paperwork." Docket # 39-1 at 7. However, per her Rule 56 Statement of Material Facts, Ford concedes that she has no evidence to show that her doctor submitted any paperwork, see Docket # 41-3 at 6 ¶¶ 23, 24, and she now proceeds on the theory that she was not required to comply with Matrix's request.

8

About a week after the meeting with Ford, on October 11, 2017, Patel received an email from Matrix notifying her that it had denied Ford's FMLA leave request because she had not sent in any documentation. See Docket # 39-5 at 39. Patel forwarded the email to Rivera and wrote:

> [Ford's] claim was denied as you can see below.
>
> It looks like her vacation balance is 32 hours. You could code 9/19 – 9/22 to that vacation time. Meaning 9/23 – 10/2 was unapproved time off. As a result of her former attendance issues and these 10 unapproved days, you may terminate employment.

Id. Pursuant to Patel's email, Rivera terminated Ford's employment. Ford was 41 years old at the time of her termination.

In October 2018, Ford sued ASI in New York state court. The case was removed to federal court later that month. In her complaint, Ford raises a number of claims, including age discrimination, disability discrimination, retaliation, and negligent training, hiring, and supervision.

## DISCUSSION

ASI moves for summary judgment on all claims. In her opposition, Ford addresses only two of her claims - age discrimination and retaliation. See Docket # 41 at 7. Because Ford fails to address or defend her other claims, they should be deemed abandoned. See Jackson v. Fed. Express, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may

9

. . . infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

The Court addresses Ford's remaining claims as follows:

<u>Age Discrimination</u>: Ford brings age discrimination claims under the Age Discrimination in Employment Act ("ADEA") and New York State Humans Rights Law ("NYSHRL"). Both employ the same <u>McDonnell Douglas</u> burden-shifting framework. <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 105 n.6, 106 (2d Cir. 2010). Under this familiar framework, a plaintiff must first establish a <u>prima facie</u> case of age discrimination, by showing "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." <u>Id.</u> at 106-07. If the plaintiff establishes a <u>prima facie</u> case of discrimination, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action." <u>Id.</u> at 106 (internal quotation marks omitted). If the defendant meets that burden, "the plaintiff must then come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000). To survive summary judgment, the plaintiff must proffer "sufficient evidence upon which a reasonable jury

10

could conclude by a preponderance of the evidence that her age was a 'but for' cause of [the employer's] decision to fire her." Gorzynski, 596 F.3d at 107.

For purposes of this motion, the Court will assume that Ford can establish a prima facie case of discrimination. Turning to the next step, ASI must proffer a legitimate, non-discriminatory reason for its action. ASI claims that it terminated Ford because of her unexcused absences in July 2017 and September through October 2017. This constitutes a legitimate reason to terminate Ford. See Flores v. Entergy Nuclear Ops., Inc., 313 F. Supp. 3d 511, 527 (S.D.N.Y. 2018) (collecting cases); see also Carvalho v. Associated Brands, Inc., No. 15-CV-72-RJA-MJR, 2016 WL 8709809, at *6 (W.D.N.Y. May 13, 2016), report and recommendation adopted, 2017 WL 405403 (W.D.N.Y. Jan. 31, 2017), aff'd, 707 F. App'x 742 (2d Cir. 2017) (summary order).

Having demonstrated a legitimate reason for disciplining Ford, the burden returns to plaintiff to produce "sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause of [ASI's] decision to fire her." Gorzynski, 596 F.3d at 107. Ford attempts to meet her burden primarily by arguing that ASI did not follow its own policies on discipline when it terminated her

11

employment.[5] Ford points out that "[e]xcessive unauthorized absences from work" are considered "Category One" violations, for which progressive corrective action is prescribed. Docket # 39-3 at 216. The process involves verbal counseling, a written warning, a final warning, and then termination. See id. at 217. Instead of following that process, Patel immediately fired her.

As a general matter, an employer's "[f]ailure to follow internal procedures can . . . be evidence of pretext." Petrovits v. N.Y.C. Trans. Auth., No. 95-CV-9872, 2002 WL 338369, at *8 (S.D.N.Y. Mar. 4, 2002); see also Bagley v. J.P. Morgan Chase & Co., No. 10-CV-1592, 2012 WL 2866266, at *15 (S.D.N.Y. July 12, 2012) (collecting cases). The evidentiary problem for Ford is that ASI's employee handbook does not mandate the disciplinary process Ford describes. While the handbook sets forth guidelines for the types of discipline that would "typically" follow from various employee misconduct, the handbook makes clear that ASI "at all times reserves the right to impose any disciplinary action—up to and including termination—which it determines is appropriate to a particular situation." Docket # 39-3 at 215 (emphasis added).

---

[5] Ford also disputes that her September-October 2017 absence can even be considered unexcused, citing a provision that allows certain employees to take extended medical leaves of absence without complying with the requirements of FMLA leave. See Docket # 39-3 at 206. By its plain terms, that provision only applies to employees "who do not qualify for FMLA due to length of service," and it is undisputed that Ford qualified for FMLA leave. Id.

This language is reiterated several times in the handbook. See id. at 215, 217, 219, 221.

Given the provisions that authorized employer discretion when imposing discipline, pretext cannot be inferred merely because Patel exercised that discretion in lieu of the progressive corrective action procedure. Other courts have reached the same conclusion. See Fane v. Locke Reynolds, LLP, 480 F.3d 534, 541 (7th Cir. 2007) (employer's failure to follow "progressive discipline procedures" did not suggest race discrimination, where policy warned that employer "reserve[d] the right to terminate any employment relationship at any time, with or without cause"); Ritchie v. Indus. Steel, Inc., 426 F. App'x 867, 873 (11th Cir. 2011) (summary order) ("[I]f management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext."); Morris v. City of Chillicothe, 512 F.3d 1013, 1020 (8th Cir. 2008); Mitchell v. N. Westchester Hosp., 171 F. Supp. 2d 274, 280 (S.D.N.Y. 2001). Ford could arguably bolster the inference of pretext by showing either that the progressive corrective action procedures were, except in her case, invariably followed, or that younger employees received less severe discipline. See Fane, 480 F.3d at 541. However, she does neither.

Next, Ford argues that the misconduct of store manager Rivera provides a basis to infer that ASI terminated her on the basis of age. See Docket # 41 at 10 (discussing Rivera's actions towards Ford and employees over the age of 40). But it is undisputed that Patel, not Rivera, made the decision to terminate Ford's employment. Thus, even if the Court were to assume that Rivera's actions reveal a bias on his part, Ford presents no facts, direct or circumstantial, to establish that Rivera was involved in, or in any way influenced, Patel's termination decision. Compare Chang v. Safe Horizon, No. 03-CV-10100, 2005 WL 2125660, at *7 (S.D.N.Y. Sept. 1, 2005) ("Actions by an individual not involved in the adverse employment decision at issue do not give rise to an inference of discrimination."), and McLee v. Chrysler Corp., 109 F.3d 130, 137 (2d Cir. 1997), with Sadki v. Suny Coll. at Brockport, 310 F. Supp. 2d 506, 513-14 (W.D.N.Y. 2004) (collecting cases for proposition "that the element of causation—i.e., that an adverse employment action was caused by discrimination—can be satisfied by showing that a person with discriminatory animus toward the plaintiff influenced the 'actual' decisionmaker, even if the latter did not consciously discriminate against the plaintiff" (emphasis added)).

Finally, Ford challenges the termination decision as unfair and unduly harsh in light of her strong workplace performance,

14

prior attendance record, and her reasonable misunderstanding of ASI's leave policies. Even if Ford is correct that she reasonably misinterpreted the employee handbook and the FMLA leave policy, and that ASI overreacted to her absences, that is not enough to establish that she was fired due to age discrimination. See Fane, 480 F.3d at 541 (dismissing race discrimination claim where employer allegedly failed to follow discretionary progressive discipline policy, and noting that plaintiff's claim was "essentially" that "her employer overreacted to her behavior—not that the [employer] fired her under false pretenses"); Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014) (noting that, in an age-discrimination case, the court does not "sit as a super-personnel department that reexamines an entity's business decisions"). Likewise, Ford asserts, without elaboration, that it was "improper" for Patel to consider the July 2017 leave of absence in deciding to terminate her, since that absence was ultimately excused. See Docket # 41 at 11. But even though ASI excused the July leave of absence, the fact remained that Ford, without pre-approval, took two extended leaves of absences in the space of a few months. Ford does not articulate why Patel could not consider Ford's whole course of behavior in deciding to terminate her, or how consideration of both sets of absences suggests age discrimination.

15

For these reasons, Ford does not present sufficient evidence to satisfy her burden at the final step of the McDonnell Douglas analytical framework. Accordingly, it is my Report and Recommendation that Ford's age discrimination claim be dismissed.

**Retaliation**: As for her retaliation claim, Ford alleges that Patel retaliated against her for complaining about Rivera by firing her. See Docket # 41 at 14-17. Having reviewed the parties' arguments, the Court concludes that this claim should also be dismissed.

The state and federal standards for an employment-related retaliation claim are the same and use the McDonnell Douglas burden-shifting framework. See Gorzynski, 596 F.3d at 110. "To establish a prima facie case of retaliation, [the plaintiff] must show (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." Id. "If the plaintiff satisfies this burden, then a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action that the plaintiff alleges was retaliatory. If the employer succeeds at the second stage, the presumption of retaliation dissipates, and the plaintiff must show that, but for the protected activity, she would not have been terminated."

16

Ehrbar v. Forest Hills Hosp., 131 F. Supp. 3d 5, 32 (E.D.N.Y. 2015) (internal quotation marks and citations omitted).

The Court will assume that Ford can meet the requirements of a prima facie case. At the next step, ASI has proffered a legitimate reason for its termination decision: Ford's unapproved absences. See Eisenhauer v. Great Lakes Plastics, No. 99-CV-129, 2001 WL 209904, at *7 (W.D.N.Y. Feb. 23, 2001)("Defendant has articulated a legitimate, nondiscriminatory reason for terminating plaintiff—i.e., she had excessive absences."). The burden shifts back to Ford to present sufficient evidence that "retaliatory intent was the 'but-for' cause of any wrongful actions"—in other words, that "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Ehrbar, 131 F. Supp. 3d at 36.

To meet this burden, Ford largely relies on the temporal proximity between her complaint and termination, but it is well-established that temporal proximity alone is "insufficient to satisfy [the employee's] burden to bring forward some evidence of pretext." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010); see also Gong v. City Univ. of New York, No. 20-1341, 2021 WL 422451, at *2 (2d Cir. Feb. 8, 2021) (summary order) ("Temporal proximity alone is insufficient to defeat summary

17

judgment at the pretext stage." (quoting Kwan v. Andalex Grp. LLC, 737 F.3d 834, 847 (2d Cir. 2013))).

In attempt to bolster the inference of pretext, Ford notes that, when she made the complaints, Patel responded that the issues with Rivera "were [her] own fault," forbid Ford from discussing the complaints with others, and looked "extremely uncomfortable" during the conversation. Docket # 41 at 16. Ford's argument seems to be that Patel's reaction reveals her anger over the complaints and her intent to contrive a reason for termination. But the few snippets of conversation and observations Ford relies on would be too speculative to support a finding of pretext. Moreover, Ford presents no evidence that Patel's behavior towards her changed after the complaint. See, e.g., Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1246 (8th Cir. 1998) (retaliatory motive could be inferred where supervisor's "demeanor and his relationship with [plaintiff] changed after the complaint"). The inference of pretext is even more difficult to draw given the other circumstances: it is undisputed that Ford took two unapproved leaves of absence; Patel's decision to terminate Ford's employment on those ostensibly valid grounds occurred only after Matrix notified her that Ford had not substantiated her FMLA leave request; and there is no evidence to show that the decision to terminate—rather than impose lesser discipline—so deviated from

18

usual practice as to suggest that something discriminatory was afoot. At most, Ford only presents suspicions and conjecture to demonstrate retaliatory intent; she fails to show any "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Kwan, 737 F.3d at 846; see also Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture [are] insufficient to preclude the granting of the motion [for summary judgment]."); Isaac v. City of New York, 701 F. Supp. 2d 477, 489 (S.D.N.Y. 2010)("[C]onclusory and speculative statements are insufficient to withstand a motion for summary judgment.").

For these reasons, Ford has not marshalled sufficient evidence to demonstrate that, but for her complaints, she would not have been terminated. Accordingly, it is my Report and Recommendation that Ford's retaliation claim should be dismissed.

## CONCLUSION

For the reasons stated above, the Court recommends that ASI's motion for summary judgment (Docket # 39) be **GRANTED** and that Ford's complaint (Docket # 1) be **DISMISSED**.

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated:   Rochester, New York
         February 18, 2021

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure.

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:   February 18, 2021
         Rochester, New York